[Sac. No. 6576. In Bank. Dec. 2, 1955.]

CITY OF SUSANVILLE, Petitioner and Respondent, v. LEE C. HESS COMPANY (a Corporation), Appellant; ANN RATHNER, as City Clerk, etc., et al., Cross-Defendants and Respondents.

Clewe, Blade & McDonald and Robert W. Anderson for Appellant.

Donald P. Cady, City Attorney, Sturgis, Den-Dulk, Douglass & Henes and Eugene K. Sturgis for Respondents.

Richard C. Waltz, City Attorney (Beverly Hills), Archie L. Walters, City Attorney (Burbank), Grayson Price, City Attorney (Chico), Thomas F. McBride, City Attorney (Concord), Donald A. Stewart, City Attorney (El Cajon), Donald H. Smith, City Attorney (Seaside), C. M. Ozias, City Attorney (Fresno), Leo R. B. Henrikson, City Attorney (La Mesa), Allen Grimes, City Attorney (Modesto), John H. Collier, City Attorney (Oakland), Hilton W. Melby, Assistant City Attorney, Karl Brooks, City Attorney (Petaluma), J. F. DuPaul, City Attorney (San Diego), and John A. Nejedly as Amici Curiae on behalf of Respondents.

McCOMB, J. pro. tem.*—This cause was transferred to this court after decision by the District Court of Appeal, Third Appellate District. Upon further examination of the record, we adopt the opinion of Mr. Presiding Justice Van Dyke, with such omissions and additions as hereinafter ap-

---

*Assigned by Chairman of Judicial Council.

pear, as and for the decision of this court. As modified, it reads:

"The city of Susanville adopted a resolution of intention to do certain public work within its boundaries, proceeding under the Improvement Act of 1911, now contained in division 7, part 3, of the Streets and Highways Code. All prescribed action was duly taken, up to and including a call for bids, and Lee C. Hess Company, a corporation, submitted the lowest bid. The city council passed a resolution declaring Hess Company to be the lowest responsible bidder and awarding to it the contract for doing the work. Four days later, and acting upon mistaken advice by the assistant director of the Department of Professional and Vocational Standards that Hess Company was not a properly licensed contractor, the city council held a special meeting attended by all its members, but without any notice to Hess Company, and thereat passed a resolution declaring that Hess Company had not been qualified to bid the work and purporting to award the contract to one Katsaros, a bidder whose bid had been next lowest to that of Hess Company.

"In this case the trial court found that the Hess Company had been properly licensed at all material times. The first resolution awarding the contract to Hess Company directed, as required by the statute, that the city clerk publish notice of that award, but no notice was published. The second resolution directed the publication of notice of award to Katsaros, and that publication was made, and a proposed formal written contract was delivered to Katsaros. At this point, and before the formal contract was executed by Katsaros, the city began this action under the provisions of chapter 10 of said division 7 of said Streets and Highways Code, to determine the validity of proceedings theretofore taken. The code provides that any time after bids have been received, and prior to the date fixed for the beginning of the work, the legislative body conducting the proceedings may bring an action in the superior court to determine the validity of the proceedings and the validity of any contract entered, or to be entered, into pursuant thereto. Any contractor to whom a contract has been awarded may also bring the action. The action is declared to be in the nature of a proceeding *in rem* and anyone interested is given the right to appear and 'contest the validity of such proceeding and contract or uphold the same.' (§ 5268.) Hess Company answered the city's petition, asserting that the contract had been awarded to it and declaring its willingness to enter into the formal written

contract in accordance with the award. It asked that the legislative body and other city officials be mandated to recognize it as the contractor for the work and to proceed to deal with it in that capacity. The trial court found in favor of the city, declaring all proceedings taken to be valid, including the second resolution which, in effect, rescinded the prior resolution awarding the contract to Hess Company and adjudged that a contract executed by the city and Katsaros would be a valid contract. All relief asked by Hess Company was denied. From that judgment Hess Company has appealed.

"In support of its appeal Hess Company contends that when the city council made the award to it a binding contract between the city and the Hess Company arose; that the city's power to act further in the matter of making an award had been exhausted and that its action rescinding the award was a nullity. It contends further that the meeting at which the second and rescinding resolution was passed was an illegal meeting in that it was not held at the city hall as prescribed by law. Before examining these contentions we will consider the claim of the city that Hess Company lost all right it might have had to object to the rescinding action taken by the council or to litigate the issue of the validity of the city's proceedings because it had never appealed to the city council, that is to say, had not exercised its right to administrative remedies which the city contends was afforded it by the relevant statute. The contention cannot be sustained.

"It is, of course, well settled that where an administrative remedy is provided by statute relief must be sought from the administrative body and the remedy exhausted before the courts will act; and that a court violating the rule acts in excess of jurisdiction. (*Abelleira* v. *District Court of Appeal*, 17 Cal.2d 280, 292 [109 P.2d 942, 132 A.L.R. 715].) It is equally well settled that where a statute provides an administrative remedy and also provides an alternative judicial remedy the rule requiring exhaustion of the administrative remedy has no application if the person aggrieved and having both remedies afforded him by the same statute, elects to use the judicial one. (*Scripps Memorial Hospital, Inc.* v. *California Emp. Com.*, 24 Cal.2d 669, 673 [151 P.2d 109, 155 A.L.R. 360].) . . . "

In the present case judicial and administrative remedies were granted the Hess Company in the alternative. Section 5003 of the Streets and Highways Code, relied on by the city, reads as follows: "This division shall be liberally con-

strued in order to effectuate its purposes. No error, irregularity, informality, and no neglect or omission of any officer, in any procedure taken under this division, which does not directly affect the jurisdiction of the legislative body to order the work or improvement, shall avoid or invalidate such proceeding or any assessment for the cost of work done thereunder. The exclusive remedy of any person affected or aggrieved thereby shall be by appeal to the legislative body in accordance with the provisions of this division." This section is inapplicable to the present case as will be seen from the following analysis of that section and various other sections of the Streets and Highways Code:

(a) Section 5003 is substantive, not a procedural provision. It grants a right but provides for no machinery to enforce this right.

(b) Sections 5220, 5258, 5259, 5265, 5266, 5267, and 5268 are purely procedural sections, providing the machinery which section 5003 does not.

(c) Section 5220 provides a remedy for an owner of property liable to be assessed and for no other class of persons. It does not provide for an appeal to the legislative body, but for a written protest.

(d) Section 5221 provides for the disposition of such protests.

(e) Sections 5230 et seq. provide for a change of work or change of assessment boundaries, and nothing else.

(f) Sections 5258 and 5259 are specifically limited by the terms of section 5258 to "any owner of, or other persons having any interest in, any lot or land liable to assessment. . . ." Section 5258 does not provide for appeal to the legislative body but provides for filing a written notice with the clerk.

(g) Section 5265 provides for the bringing of an action to determine the validity of proceedings by the legislative body.

(h) Section 5266 grants the contractor the same right.

(i) Section 5267 and section 5268 merely provide what the nature of the action is, for publication of summons, and for appearance by any interested person in such action.

(j) The only sections referring to appeal to the legislative body are section 5366 et seq., and these sections do not become operative until the work or a part thereof has been done or assessment levied.

There is nothing in the act or in any of the cases interpreting the act which provides that the contractor must appeal to the legislative body, except under section 5366.

The statement in *Stotts* v. *Meese,* 39 Cal.App. 334 [178 P. 727], relied on by the city, that while there was nothing in the curative section (which is identical with section 5003) in the Vrooman Act which authorized the superintendent of streets to appeal to the city council for the correction of an assessment, nevertheless if the superintendent of streets had appealed, the city council could have corrected the error, was dictum in such case. Actually, the cited case is one wherein a property owner attacked the validity of an assessment, and is therefore not authority for any proposition now presented to us.

■ Section 5660 of the Streets and Highways Code is also urged as authority for the proposition that the Hess Company may not maintain this action. The section provides that no action, suit, or proceeding with reference to assessments or with reference to review of proceedings, acts, determinations or to questions of validity etc. of assessments, or to enjoin the issuance of bonds, shall be maintained by any person unless such action is commenced within 30 days after the recording of the warrant, diagram and assessment. This is purely a statute of limitation against actions of an entirely different type from the instant action. The time limit is 30 days after the recording of the warrant, etc. That time has not arrived.

■ *Mathes* v. *City of Long Beach,* 121 Cal.App.2d 473 [263 P.2d 472], is also urged by the city as authority for the proposition that minor irregularities in a validation proceeding are to be ignored. This is a correct statement of the law as an abstract proposition. However, the principle has nothing whatever to do with any phase of the present case. In the first place, the action of the city council in rescinding the award to Hess Company was not a "minor irregularity," or an irregularity at all. It was an act which the council had no authority to perform and was therefore ineffective.

An examination of the facts in the Mathes case shows that the contractor questioned the validity of the contract awarded to him under the authority of section 5266 of the code, in some 19 particulars. The opinion does not disclose what 18 of these particulars were, but discusses only one, which was the proposed inclusion in the contract of a recital that the federal government had the power to stop the work at any time, and what would be done in the case of such termination of the work. The contractor contended that since the property owners whose lands were to be assessed were not advised as to the proposed inclusion of this clause that the contract was void, and the trial court so found. However, the District Court of Appeal re-

versed the decision and held that the contract was entirely valid; that the clause under consideration, defining the rights of the parties if the federal government should stop work, was similar to clauses in contracts excusing performance because of natural calamities. The court said that "Instead of impinging upon, this clause recognized and protected substantial rights of the city, the property owners affected, and the contractor" and that "Therefore, this court has come to the conclusion that it was error to hold that this clause, measured by the provisions of the Improvement Act of 1911, imposed upon the owners within the assessment district a burden not authorized by law."

The court further said that its conclusion was supported by sections 4410 to 4412, inclusive, of the Government Code, which recognize the possibility of stoppage of public work by order or proclamation of the President of the United States, and provide that in such circumstances the contracting parties may agree for the payment of compensation for work done before it is stopped by an overriding power.

The court dismissed the other 18 asserted defects saying that they had been given careful consideration by the trial court and the findings by the trial court were that none of them affected the validity of the contract. This decision clearly is of no value in disposing of the problems presented in the instant case.

It is urged that section 5273 of the Streets and Highways Code made the determination of the city council "conclusive in the absence of actual fraud." The section reads: "Operation of judgment upholding proceedings: Conclusiveness of findings, etc. If the validity of the proceedings and of the contract or proposed contract is sustained, the validity of such proceedings or contract shall not thereafter be contested in any action, suit or proceeding, and the judgment entered in the action herein provided for shall be conclusive evidence of the validity of such contract and of all proceedings prior thereto. In such action, all findings, conclusions and determinations of the legislative body which conducted the proceedings shall be conclusive in the absence of actual fraud."

Obviously this section applies to those findings, conclusions and determinations which the act authorizes the legislative body to make. It does not apply to every conceivable determination of such body for, if it did, no useful purpose would be served by the validation proceedings which contemplate judicial review.

The city attempts to apply the provisions of sections 5221, 5233 and 5368 of the Streets and Highways Code to section 5273, making a point of the fact that under these sections certain findings and determinations of the city council are final and conclusive. The nonapplicability of these sections to the instant case is demonstrated by the following:

Section 5221 appears in chapter 8 of the 1911 act under the chapter heading, "Protest and Hearing." It is necessary to read section 5220 with section 5221. Section 5220 provides for the hearing of objections to the proposed work and grants to any owner of property liable to be assessed the right to make written protest against the proposed work or against the extent of the district to be assessed. Section 5221 sets up the procedure for the hearing of such protests.

Section 5233 appears in chapter 8.5 of the 1911 Act under the chapter heading "Change of Work, Boundaries of Assessment District or Proceedings." This section gives the right to any interested person to file written objections to changes in the proposed work or in changes of the boundaries of the assessment district, and provides the procedure for hearing such objections by the legislative body.

Section 5368 appears in chapter 16 of the 1911 Act under the chapter heading "Making and Confirming the Assessment. This section provides that determinations of legislative bodies shall be final and conclusive upon all persons entitled to appeal to the legislative body as to matters listed in section 5366 which may be the subject of appeal to the council.

This section is the first point in any proceedings under the act at which the contractor is bound, if he be aggrieved, to appeal to the council. The matters concerning which an appeal may be taken concern the "work done," "the assessment," a claim "that the work has not been performed according to the contract in a good and substantial manner," or a claim "that any portion of the work for any reason was omitted or illegally included in the contract." It also gives a right to those persons "having or making any objection to the correctness of the assessment or diagram or other act, determination or proceedings of the superintendent of streets or engineer. . . ."

Obviously this section does not apply until some of the work has been done or until an assessment has been made. Each section cited entails notice to the interested party and hearing thereafter. No notice was given to the Hess Company of the city's intention to rescind the award and no hearing was

offered. None is provided by the act. The court's jurisdiction cannot be so summarily ousted.

■ "Before considering the contentions of Hess Company upon the merits, it should be said that the Improvement Act of 1911 was originally enacted and has maintained its place in the statute books because of a fixed legislative policy that fairness, efficiency and security in the construction of public works can best be attained by a statutory scheme which would require that such contracts for such work must be let at competitive bidding. From the beginning to the end the provisions of the Improvement Act of 1911 are mainly aimed at securing such competitive bidding; and the courts have consistently construed the act with that legislative purpose in mind. Legislative bodies must follow the act and no attempt upon their part to claim authority to act except strictly in accord therewith can be successful. ■ The act contemplates that before bids are invited the public improvement shall be thoroughly planned; that detailed and exhaustive plans and specifications of the work shall have been adopted; and that every material term and condition of the proposed contract shall have been stated, all to the end that where contractors are invited to bid they will know exactly what they are proposing to do under the contract they offer to enter into. ■ The statute does require that after an award has been made a formal written contract shall be executed and appropriate bonds furnished for faithful performance of the work and for the payment of subcontractors, laborers and materialmen. But so well have all things been stated in the plans and specifications, in the proposal for bids, in the information and instructions to bidders, in the notice inviting bids and in the required bid forms that the formal contract is a brief document referring to these preceding writings for a statement of the obligation of the parties; these writings being expressly made a part of the formal contract.

■ "It has long been decided in this and other states and in the courts of the United States that in the letting of contracts for the doing of public works where the legislative body or the administrative officer is required by statute to call for bids and must under competitive bidding conditions let the contract to the lowest responsible bidder, the making of the award gives rise to a contract between the public body or agent and the successful bidder. . . . '' (*M. F. Kemper Const. Co.* v. *City of Los Angeles,* 37 Cal.2d 696, 700 [1] [235 P.2d 7] ; *Williams* v. *City of Stockton,* 195 Cal. 743, 748 [4 et seq.], 751 [235 P. 986].) ■ In 10 McQuillin on Municipal Cor-

porations, third edition (1950), section 29.71, page 343, the rule is accurately stated, thus: ''While it is true that a municipal corporation has discretion as to the time and manner of making corporate improvements and the purchase of supplies, still when this discretion has been exercised and a contract made relative thereto, the legislative function has been exhausted, and the duty has become purely ministerial, and a contract so made cannot be impaired at the option of the municipality. Hence, when a bid has been accepted by the proper authorities, such acceptance cannot be revoked.''

''Applying the foregoing, we hold that the Hess Company's bid had been accepted and the contract awarded to it by regular action of the city council in strict pursuance of the statutory scheme. All the essentials of contract were present and Hess Company was entitled as of right to have the further proceedings take their statutory way. The city was without power, in the absence of fraud, mutual mistake or some other ground of rescission, none of which is claimed to have existed, to rescind its action and to take the contract from Hess Company and award it to Katsaros.

''Respondent argues that since the statutes require that 'Notice of the award of the contract shall be published by the clerk' (Sts. & Hy. Code, § 5248), this fixes the way, and the exclusive way, in which the acceptance of the bidder's proposal can be communicated to the successful bidder and that until this has been done no contract has arisen. Says respondent:

'' 'The provisions of the Civil Code of the State of California provide the essentials of a contract. These essentials are:

'' '(a) Offer;

'' '(b) Acceptance;

'' '(c) Communication by each to the other.' (Citing Civ. Code, §§ 1550, 1565 and 1581.)

''We think the Streets and Highways Code section referred to was not intended by the Legislature as a method whereby communication of the acceptance by the city should be given to the bidder, but on the contrary that it is limited in its effect to the notification which is required to be given to the property owners interested who for 10 days after the giving of such notice are by the statute given the right of taking over the work themselves by entering into a written contract to do so at the price at which the award had been made to the bidder. The language of the statute bears this out. The section does not say that the notice by the clerk is a notice to the bidder of

the city's acceptance of his offer, but on the contrary is a notice of the award itself. The award is treated as having been made and so far as the bidder be concerned any of the usual methods of conveying that information to him could be followed.

Indeed, since the resolution making the award is the public act of a public body, it is a matter of which notice may be presumed so far as interested parties are concerned. It appears in the case at bar that the president of Hess Company was present when the bids were opened and the award was made.

"Appellant asks that this court not only reverse the judgment of the trial court but go further and mandate the city council, its members, its clerk and the city's superintendent of streets to proceed to notice the award to appellant, and if within the 10 days allowed the property owners themselves do not take over the work, then to go further and enter into the formal contract with appellant and permit it to proceed to perform the work. We think it would not be proper for this court to so order. This is a special statutory proceeding whereunder a legislative body or one who has been awarded a contract by such body for the doing of public work may, without refusing to go forward, set at rest all questions concerning the legality of what has been done by bringing this action. The matter of whether or not the legislative body or any member of that body or employee of the city has refused to perform ministerial duties is not before the court. The sole issue is the legality of what has been done. We cannot assume that if by the court these proceedings are declared to be valid and the contract declared to have been awarded to Hess Company, there will be any refusal to perform ministerial acts arising because of that situation. We, therefore, decline to go further than to decide the issues of legality of proceedings tendered by the petition filed by the city. The proceedings were valid to the point to which they had been taken when the award was made to the Hess Company and were invalid beyond that point."

The judgment is reversed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.